EDWARDS, Judge.
Plaintiffs, Leon and Elizabeth Williams, d/b/a Antique Building Materials, brought suit against William Ourso and Charbonnet, Inc. The plaintiffs’ petition made the following allegations: Plaintiffs operate a business known as Antique Building Materials, which engages in purchase for resale of salvage and antique building materials. Charbonnet, Inc. owns a large tract of land located on Brightside Lane in Baton Rouge, Louisiana, upon which it has developed a subdivision known as River Bend. Ourso, the president and majority owner of Char-bonnet, Inc., agreed to allow plaintiffs to use a piece of land adjacent to River Bend Subdivision in order to store materials and supplies which they sold in the course of their business. Plaintiffs offered to pay rent for the use of the premises but Ourso refused to accept it. However, he did occasionally accept donations in the form of free building materials and discounts on purchases. Plaintiffs used the property from July, 1976, until September 2, 1979, and accumulated a large amount of antique and salvage materials on the premises. On September 2, 1979, Ourso, without notice to petitioners or the use of legal process, seized all materials and property on the lot and burned and otherwise destroyed them.
Plaintiff sought recovery of $70,350.95 for the value of the materials destroyed and $130,000.00 for loss of business and goodwill.
*368 Defendants denied plaintiffs’ allegations. Defendants’ answer alleged the following: Plaintiffs began using the land in question without defendants’ permission and after being questioned by Ourso about this, Leon Williams asked to rent the tract of land. Williams did not have the money to pay rent but agreed to give defendants discounts on future purchases until he could afford to pay an agreed upon rent of $200.00 per month. Plaintiffs failed to keep up the property, scattering material haphazardly about and making holes in the ground. Despite defendants’ repeated requests, plaintiffs failed to clean up the property. Ourso ordered plaintiffs to vacate the property after receiving a notice from the City of Baton Rouge ordering him to clear the property within 30 days. Plaintiffs removed all material of any value owned by them from the property except for about fifteen pallets of bricks. On September 2, 1979, defendants had the land cleared and burned all the trash, scrap and rotten lumber left behind, taking special care not to damage plaintiffs’ bricks.
Defendants filed a reconventional demand, seeking to recover from plaintiffs back rent due in the amount of $7,600.00 (38 months at $200.00 per month) and $3,000.00 in expenses incurred in restoring the land.
After trial on the merits the trial court rendered judgment on the main demand in favor of the defendants, dismissing plaintiffs’ action. The trial court also dismissed the reconventional demand. Plaintiffs’ motion for a new trial, alleging that the judgment was contrary to the law and evidence was denied.
The Williams have appealed contending that the trial court erred in holding that they did not prove by a preponderance of the evidence that the destroyed materials were of any value and in denying the motion for a new trial. They also assign error to the trial court’s conclusion that their income tax returns, prepared the weekend before trial, were less valuable as evidence than they would have been had they been prepared in due course and filed timely with the federal government.
The trial judge gave extensive oral reasons for judgment. These reasons are reproduced in an appendix attached to this opinion. After a thorough review of the record, we are unable to say that the trial court’s factual conclusions are manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Co., 283 So.2d 716 (La.1973).
Therefore, the judgment of the trial court is affirmed. Costs of this appeal are to be paid by plaintiffs-appellants.
AFFIRMED.
APPENDIX
THE COURT: All right. This suit was brought by Leon and Elizabeth Williams, doing business as Antique Building Materials, versus William D. Ourso, and a corporation by the name of Charbonnet, Incorporated. Evidence in this case is uncontra-dicted in that the piece of land in question, particularly with Mr. Ourso’s testimony, because nobody refuted it, the land was owned by Hope Developers. So Charbon-net, Incorporated apparently, Charbonnet, Incorporated developed the subdivision and Mr. Ourso is a party personally to this suit. This is a suit against Mr. Ourso and Char-bonnet based upon the allegations that there was some $71,988.14 worth of the plaintiffs’ property on this land, and that over the Labor Day weekend of 1979 that Mr. Ourso did burn all of that property, and for that the plaintiffs seek that amount, and in addition seek a sum for a hundred and thirty thousand dollars for loss of business and good will. The defendants in this case reconvened basically on two grounds. First, they claim that an oral contract of lease existed between them and the Williams to pay rental in the sum of two hundred dollars a month, which they allege to be thirty-eight months, which was a total of $7,600.00, which the plaintiffs in reconvention allege has never been paid. In addition to that, evidence came out in this case whereby there was a bid made for the restoration of the land as a result of the defendants in reconvention use of the land, whereby it would cost a sum of two thou *369 sand dollars to put it back in shape. Which means that we have a claim for destroyed materials on the main demand and we have a claim for rent and restoration on the reconventional demand. One counsel stated in his closing argument that the evidence in this case is diametrically opposed. The Court’s thoughts during this case was that probably it was a good thing that neither party asked for a jury trial because the Court wonders how a jury would ever arrive at a verdict. Because in that case there would be twelve people rather than one. The only thing that the Court can do with the diametrically opposed testimony in the case is to apply the principles of law that we must apply that have been set up over the period of years for Courts to decide civil disputes. Basically, we must, the Court must evaluate the evidence in this case, all of the evidence that’s been presented, and to decide each demand whether the person or persons claiming those demands or making those claims have proved their cases by a preponderance of the evidence. It may be out of order, but the Court first would like to deal with the reconventional demand. The testimony in this case, which was uncontradicted in the beginning was that Mr. — the plaintiff, Mr. Leon Williams met with Mr. Will Ourso at one time at the Hilton, and in their discussion they were apparently — Mr. Ourso in development and construction and Mr. Williams in the antique building materials business, and in their discussion of business, some how or another, it ended up that Antique Building Materials utilized certain property which Mr. Ourso stated belonged to Hope Developers, but that was basically his property and any permission to go on it, of course, was given by Mr. Ourso. And so the Court would merely discuss the relationship from the point of view of Mr. Ourso without worrying about the corporate situations. The record shows that some time during the latter part of ’76 or maybe the first part of ’77 that Mr. Williams and Miss Williams’ business, Antique Building Materials, began to occupy this land. The Williams, of course, indicated that Mr. Ourso indicated to them that they could stay there without paying any rent and that they were free to use the property for the storage of their antique materials. Mrs. Williams testified that no rent was discussed. The lot was in a grown up cattle pasture, and that Mr. Ourso freely allowed them to use this property. Mr. Ourso, on the other hand, takes the position that he always said that he wanted two hundred dollars a month for this property, and that after he told them to leave the property that it would have cost him two thousand dollars to restore the property had he allowed Mr. Jarvis to do it. On the reconventional demand the Court must say that in this case the plaintiff in reconvention is very experienced in the field of real estate. He certainly should have realized that leases should be in writing, and if they aren’t, after a certain period of time if people are not paying the rent, they should file a suit for eviction to bring them off. The Court feels that this evidence has not shown any evidence of any contract of lease on this property nor any agreement on the part of the people occupying the land to restore it. The Court can not sustain the claim for the reconventional demand. On the main demand, this is an action for conversion. The law is clear that in a conversion, in the' event property is converted and is destroyed, the one who converts it must, if it proved, must make reparation. There has been testimony in this case that Mr. Ourso burned their property and there have been no specific reasons stated as to why he would do that. The testimony in the case, just for the record, I must say that Mr. Ourso did state that he had been receiving complaints and that even the local government sent him notice that this lot must be cleaned up. There was testimony that part of it was because of the fact that there was an old shack on it, but it’s also fair to state that in the request by the neighborhood improvement division of the City-Parish government it did state, Mr. Ourso would be required to clean the premises of scattered lumber. In defense of this action, after the plaintiff’s case, the defendant called certain witnesses because there was a question as to whether *370 or not the merchandise, or the stock or whatever it might be, had been moved. Mr. Leon Williams, one of the plaintiffs in this matter, was called under cross-examination. He stated, as the Court recalls, that he did move some of the materials off after he was informed that he should get off. He stated that a great part of his business was finding materials at the demolition site and delivering them directly to the buyer. He further stated that the storage area in question was kept more or less as a nest egg, and that the main business he did was finding materials and delivering them directly. He, as I stated before, he stated that he had moved part of the materials off. He stated that his business has fallen off because of the fact that the economy in the building situation is like it is. That was basically his testimony in regard to the main demand. Mr. Charles Hubbs, the design and development consultant for River-bend, also — somewhat, I guess you would say, friend with Mr. Ourso, mentioned that he had eaten there and visited the site periodically or the subdivision. But, he stated that he had passed the site daily. The property was being utilized for the storage of materials. He visited the site prior to Labor Day and that he saw some materials on there, but they were not worth hauling off, and that there were also some old brick there. And he said that the lumber or the other materials were not stacked neatly, and that all of the stacks had been removed. Mr. Whittington, who builds in that subdivision, looked at the site personally about a day or two before the fire, and he did not see anything of value. He saw there was lots of pieces of broken up lumber. He stated that he did not see anything in the shack. Mr. Jarvis, who apparently does land clearing for a living, he stated that he did, he said he has done work for Mr. Ourso in Riverbend. He gave a bid on that site. He went there on Labor Day weekend and he found a bunch of trash and bricks, and he gave Mr. Ourso an estimate of about two thousand dollars. Mr. Ourso said that if he used the bulldozer himself that Mr. Jarvis stated he would give him a break of five hundred dollars. And thereafter he went back and he said that because of the work that Mr. Ourso had done, it would probably cost more money to do. He further stated that he saw nothing in the shack. Mr. Milton Ourso said he went down there and he said there was nothing of any value on the place. Miss Mizell testified that there had been trucks leaving the property for several weeks. It looked as though they were hauling off their materials. Mr. Major testified in this case that he is a builder and a carpenter. He is a builder of antique furniture. He readily admitted that he did business with the plaintiffs at the beginning, but for some reason or another that they had fallen out and as a result he didn’t do business with them any longer. He was candid in that. But, nevertheless, he said that he used to do exercise, ride his bicycle by the site because he lived near there. He said for about five weeks it seemed that the Williams were moving the inventory off of the property, and he said that there was a continuing lessening of the inventory there with piles of lumber disappearing. He stated it was his opinion that they were moving off of the place. He said there was one stack of lumber left by the old house and that there was some bricks. He stated that there could have been maybe three thousand board feet of lumber, and there were varying kinds of lumber there. Of course, it must be stated by the Court as well, there was the old shack there that also was part of the material that was burned. That is basically the defense’s case in this matter. The Court must then apply the evidence put forth by the plaintiff in this case to determine if that was proved by a preponderance of the evidence. Mr. Ourso was of course called on cross-examination. The Court has already stated that he did feel that the material there except for the brick that was left was scrap and therefore he burned the material, the debris on the lot and left the bricks, pushed the bricks, left the bricks there somewhere on the property. In this case, since a claim has been made for damages, the Court must then determine if the plaintiff has proved damages and what *371 damages have been proved to a reasonable certainty by a preponderance of the evidence. Mrs. Williams testified that she knows from her memory the property that was left on the subject tract of land that belonged to her. The Court asked her directly if that business maintained an inventory of its property, and the answer was to the effect that it did not maintain a book with the inventory of the property. She stated that the value of the property, as to their cost, was.$33,681.00. She stated that she could get for that $71,988.14. There has been, of course, no other testimony as to the market value of that property, and basically other than the invoices that — basically the wholesale value, and some areas are speculative. To substantiate that figure the accountant testified that on the 1979 income tax return an involuntary conversion of a loss of inventory in the amount of $33,681.00 was claimed. As has been pointed out, evidence on this income tax return, the problem with that is the fact that on the ’78 return it was not prepared until last weekend, which was required to be filed in April, 1979. This was a business with a gross sales, according to schedule (C) in 1978 of a hundred and fifty-six thousand dollars, yet no income tax return whatsoever was filed. This was a business that in 1979 grossed sales of $128,170.00, and up until the Friday before this trial on a Monday no income tax return was filed. The accountant testified that of course he had had a little sickness and was busy, and although this is not a tax case, I’m certain that the Federal authorities would not accept that as an excuse for not filing an income tax return. Because of the late preparation of that return of course, the evidence in that matter as to substantiate the loss is less valuable because it was not filed in due course. In so far as the corroboration of what was left on the property, Mrs. Williams stated with particularity what she remembered was on the property, and did state that she had a good memory, but had no inventory. In so far as the bricks were concerned, she stated that the bricks were removed after the fire. Mr. Royal, of course, stated that his company had delivered some material. On rebuttal, taken out of order, was Mr. Harold Burns. He stated that he had bought some materials from the Williams. He bought the materials last on July the 9th, but he was on the property on August the 28th. He said that there was quite a bit of stuff in the building and things around. He stated that there were — He continued — He stated that the inventory kept increasing during the summer of 1979. Mr. Heroman testified that he had been out to the property quite a bit, and he testified as to some property being there right before the fire. He did not substantiate the amount of the property as testified to by the plaintiff, Miss Williams. And the thing that concerns the Court particularly is that Mr. Burns, although he testified that the inventory kept increasing, Mr. Heroman’s testimony does not reflect that, nor does the testimony of Mr. Leon Williams himself, who stated that he moved some of the materials off of the property. You then have a situation where without a written inventory, basically on the memory of one of the plaintiffs, this Court is asked to assess damages in the amount of seventy-one thousand dollars. And the Court feels that the law is clear that the Court can not do that. It has not been proved by a preponderance of the evidence. Of course, there is evidence that there may have been some amount, and the Court can not determine if it had any value or not. It has not been proved to a certainty. The Court may say in mitigation of that fact that these plaintiffs did utilize the defendants property for some thirty-three months. And to accept Mrs. Williams value of the rental, that alone, had the Court awarded use of the — for rental use, it would have been some forty-nine hundred and fifty dollars. Plus, if the Court accepted the two thousand dollar clearing, that would have been sixty-nine hundred. And that would more than compensate what the Court feels has been shown, if anything, was left on this property. Based upon that, the plaintiff’s suit is dismissed at plaintiff’s cost. *372 Judgment will be signed accordingly. The reconventional demand is dismissed as well. Adjourn Court until 9:80 tomorrow morning.
* * * END OF TRIAL * * *